IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

United States Courts
Southern District of Texas
FILED

MAY 1 2 2006

Michael N. Milby, Clerk

| | |
|---|---|
| HAZEL CONNER AND SYTHERIA TUCKER<br>Plaintiffs<br><br>V.<br><br>CELANESE, LTD., individually and as successor in interest to CELANESE CHEMICAL GROUP, LTD., and CELANESE INTERNATIONAL CORP., Individually and as general partner to CELANESE, LTD.<br>Defendants | CIVIL ACTION NO. V-03-54<br>(Jury Trial Demanded) |

### DEFENDANT'S RESPONSE TO PLAINTIFFS' MOTION TO RECONSIDER THE COURT'S GRANTING SUMMARY JUDGMENT ON PLAINTIFFS' FLSA WAGE CLAIM

Defendant Celanese Ltd. (incorrectly sued as Celanese Ltd., individually and as successor in interest to Celanese Chemical Group, Ltd.) ("Celanese") files this response to Plaintiffs' motion to reconsider the Court's summary judgment on Plaintiffs' Fair Labor Standards Act ("FLSA") wage claim.

1. As has been typical of all their briefing to date, Plaintiffs have once again misstated the law and otherwise ignored United States Supreme Court precedent in an attempt to resuscitate claims that this Court has already properly found meritless.[1] Moreover, Plaintiffs ignore the clear language of the FLSA and the undisputed facts of this case which conclusively demonstrate that Celanese properly paid overtime compensation. Plaintiffs' motion to reconsider should, therefore, be denied.

---

[1] *See* Memorandum & Order (Dkt. #95) at pp. 10–11.

174563

2.  In its Memorandum and Order granting summary judgment in favor of Celanese, the Court correctly noted the requirements of the FLSA. The FLSA provides that an employer must pay its employees at least the statutory minimum wage of $5.15 per hour. *See* 29 U.S.C. § 207(a)(1). The FLSA further requires an employer to pay overtime compensation at a rate of one and one-half times the employee's "regular rate" of pay for all hours worked in excess of 40 in a week. *See* 29 U.S.C. § 207(a)(1). The Act ***expressly permits*** an employer to meet the overtime requirements by paying one and one-half times the employee's "regular rate" for all hours worked in excess of 8 in day. *See* 29 U.S.C. § 207(e)(5); 29 C.F.R. § 778.200(a)(5); 29 C.F.R. § 778.202(a); *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 466, 464–65 (1948).

3.  An employee's "regular rate" is the hourly rate ***actually paid*** for the normal, non-overtime workweek. *York v. City of Wichita Falls, Tex.*, 48 F.3d 919, 921 (5th Cir. 1995) (holding that "[a]n employee's regular rate of pay is 'the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed.'" (*quoting Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 425 (1945)). For an employee who is paid an hourly rate, then, that hourly rate is the employee's regular rate. *See* 29 C.F.R. § 778.110(a).

4.  There is no legitimate dispute that Celanese fully complied with these provisions. As the Court noted in its Memorandum and Order, Plaintiffs "do not dispute that Defendants ***actually paid*** them at a lower hourly rate than the posted rate."[2] The Court also found that

---

[2] *See id.* at p. 11 (emphasis added). Here, of course, the Court was referring to the 12-hour rate Celanese actually paid its 12-hour shift employees. The FLSA provides that the term "regular rate" does not include certain types of compensation, and specifically excludes:

> extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of *eight in a day*.

29 U.S.C. § 207(e)(5); *see also* 29 C.F.R. 778.200, 778.202(a). Consequently, under the express language of the FLSA, Celanese's use of premium pay for hours 9 through 12 in each 12-hour shift cannot be considered when determining an employee's "regular rate of pay" as a matter of law. The 12-hour rate paid to Plaintiffs was, therefore, their "regular rate."

174563

2

Plaintiffs "do not dispute that they were paid time and half of the 12-hour rate for each hour they worked in excess of eight hours in a single day."[3] At all times, Plaintiffs' hourly rate was higher than the statutory minimum wage. Therefore, as the Court correctly concluded, Celanese fully complied with the FLSA, and there can be no violation as a matter of law. Further analysis is neither required nor proper under these undisputed facts.

5. All of this notwithstanding—and for the first time in the nearly three years that have elapsed since this action was filed—Plaintiffs now claim that Celanese's 12-hour shift schedule somehow constitutes a "split-day plan" in violation of the United States Supreme Court's holding in *Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 42 (1944). In advancing this argument, however, Plaintiffs entirely ignore the facts of that case and the analysis conducted by the Supreme Court therein, as well as the fact that the FLSA expressly permits employers to pay overtime in the manner used by Celanese. The *Helmerich* opinion addressed a specific set of circumstances entirely unrelated to the instant case, and held simply that an employer who pays its employees at a daily rate cannot calculate overtime compensation based on an hourly rate that is a "mere artifice unrelated to wage-earning actualities." *See Walling v. Harnishfeger Corp.*, 325 U.S. 427, 433 (1945) (Frankfurter, J., concurring) (distinguishing the *Helmerich* decision from the holding in *Belo Corp.*)

6. In *Helmerich*, the employer paid its employees by a set daily wage. *Id.* at 38.[4] After the FLSA was enacted, the employer was required to calculate a regular *hourly* rate for purposes of applying the Act's overtime requirements. *Id.* at 38–39. However, in a blatant

---

[3] *See id.* at p. 10.

[4] Employees were required to work 8-, 10- or 12-hour shifts, and employees on each shift received a set amount of money for the entire shift. For instance, a rotary helper worked 8-hour shifts and received $7 per shift. *Id.* at 39 n.1. This was true regardless of whether the employee worked one shift in a week or seven shifts, and therefore was true whether the employee worked 8 hours in a week or 56. *See id.*

174563

attempt to evade the purpose of the FLSA, the employer created a "fictitious" hourly rate solely for the purposes of supposedly calculating overtime premiums. *Id.* at 41. The employer then arbitrarily split each regular 8-hour work day into four hours of "regular" pay and four hours of "overtime" pay, such that the end result was an identical daily wage to that being paid previously. *Id.*[5]

7. However, and contrary to Plaintiffs' representations to this Court, the vice of this pay policy was **not** the fact that the employees' total wages remained constant; indeed, the Supreme Court had previously concluded that such a result is expressly permissible under the FLSA. *Walling v. A.H. Belo Corp.*, 316 U.S. 624, 630 (1942). Instead, the Supreme Court found that the employer violated the FLSA because it was not actually paying its employees at the hourly rate it assigned; rather, it was really still paying them at a "daily" rate just as it had before. *Helmerich*, 323 U.S. at 41. Because the employer was not using a correct "regular rate" for purposes of calculating overtime compensation due to the employees, its pay scheme violated the FLSA. *See id.*

8. This fact was made more obvious by the employer's arbitrary division of a regular 8-hour workday into four hours of "regular" pay and four hours of "overtime" pay. The net effect of this artificial division was to prevent the employees from working 40 "regular" hours, such that they would be entitled to overtime, until they had actually worked 80 hours in a week. *Id.* Thus, the Supreme Court rightly determined that the employer's pay scheme thwarted the purpose of the FLSA—to require payment of premium wages for hours worked in excess of 40 non-overtime hours in a week. Instead, the employer's plan did not base its purported "overtime" wages on the number of hours worked in a week, and constituted nothing more than a

---

[5] Those employees working 10- or 12-hour shifts were paid the "regular" rate for the first five hours of each shift, and the "overtime" rate for the remaining hours. *Id.* at 38.

174563

ruse meant to hide the fact that the employer continued to pay the same daily rate it paid prior to the enactment of the FLSA. *See id.* at 40–42.

9. Despite Plaintiffs' assertions to the contrary, Celanese's hourly pay policy is clearly distinguishable. Unlike the employer in *Helmerich*, Celanese never paid its shift employees at a daily rate (or any other salary for that matter). Since the inception of the 12-hour schedule, Celanese's shift employees have *always* been paid at an hourly rate, and that rate precisely represented the wages actually earned by those employees for each regular, non-overtime hour they actually worked. When the employees sought a change to a 12-hour shift system, Celanese notified them that it would consider doing so only after reducing their hourly rate so that the change would remain cost-neutral. The new 12-hour rate then once again precisely represented the wages actually earned by those employees for the hours those employees actually worked in a regular, non-overtime workweek.

10. As previously explained, an employee's "regular rate" is the hourly rate *actually paid* for the normal, non-overtime workweek. *York v. City of Wichita Falls, Tex.*, 48 F.3d 919, 921 (5th Cir. 1995). In *Helmerich*, the employer ran afoul of the FLSA because it concocted a "fictitious regular rate" inconsistent with the rate actually paid and calculated overtime based on that fictitious rate. *Helmerich*, 323 U.S. at 41. Celanese, on the other hand, indisputably paid Plaintiffs at a specific hourly rate, and used that same rate to calculate overtime under the FLSA.[6] The fact that Celanese lowered the hourly rate upon implementation of the 12-hour shift schedule is meaningless to this determination because such an action is expressly permissible

---

[6] *See* Memorandum & Order (Dkt. #95) at pp. 10–11.

174563

5

under the Supreme Court's ruling in *Belo Corp.* 316 U.S. at 630.[7] Consequently, Celanese did not violate the FLSA.

11.     Moreover, to the extent Plaintiffs seek to analogize Celanese's payment of overtime wages for hours worked in excess of 8 in a day to the *Helmerich* employer's arbitrary division of the normal workday, their argument is specious. The employees in *Helmerich* worked 8-hour shifts prior to the FLSA and continued working those same 8-hour shifts after the Act's passage. 323 U.S. at 38. Upon implementation of the "new" pay system, however, the employer arbitrarily divided those 8-hour shifts into separate "regular" hours and "overtime" hours with absolutely no legitimate rhyme or reason. *See id.* at 38–39. Indeed, the Court found that the division was merely a result of "ingenious mathematical manipulations" and was not derived from the actual hours worked and wages earned by the employees. *Id.* at 41.

12.     Celanese's use of the 12-hour shift schedule is not even remotely analogous. Prior to the change, Celanese employees worked regular 8-hour shifts. When the new system was implemented, certain employees were then required to work four extra hours each working day. Celanese's new pay policy granted those employees premium pay for these newly-required additional hours as ***expressly permitted*** by the FLSA. *See* 29 U.S.C. § 207(e)(5); 29 C.F.R. § 778.200; *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 466, 464-65 (1948); see also 29 U.S.C. §

---

[7] Indeed, an employer's ability to reduce an employee's "regular rate" so that the employee's total compensation does not change is well recognized. In addition to *Belo Corp.* and its progeny, the Department of Labor Wage and Hour Division published a summary of proposed overtime regulations revising the FLSA in March 2003—nearly 40 years after *Helmerich*. *See* 68 Fed. Reg. 15560 (March 31, 2003) (to be codified at 29 C.F.R. pt. 541). In this summary, the Wage and Hour Division discussed the economic impact of overtime regulations, and stated that nothing in the FLSA prohibits an employer from utilizing an hourly rate that, when overtime is added, results in "virtually no (or only a minimal) changes [sic] to the total compensation paid to those workers." *Id.* at 15576. The example listed involved an employee who previously made $400 per week working 45 hours. *Id.* The summary stated that in such an instance, the employer could properly calculate as the employee's regular rate an hourly rate of $8.421 for the first 40 hours and then pay time and one-half of that regular rate for hours 41 through 45, which would result in almost identical total compensation of $399.99. *Id.* Thus, an hourly rate reduction such as the one implemented by Celanese is recognized by the Wage and Hour Division itself as a legitimate method for calculating and paying overtime in compliance with the FLSA.

174563

207(e)(5) (excluding premium pay for hours worked in excess of eight in a day from the calculation of an employee's "regular rate"). Thus, Celanese's 12-hour shift schedule cannot be considered an arbitrary or artificial division of the normal workday as found in *Helmerich*.

13. Plaintiffs also now claim that Celanese "sought to evade" the overtime requirements of the FLSA because Plaintiffs' total compensation did not increase after the 12-hour shift schedule was implemented.[8] Such a baseless assertion is patently false, however, and has already been properly rejected by this Court.[9] Moreover, Plaintiffs' claims are based on a tortured reading of the *Helmerich* opinion that would require this Court to disregard United States Supreme Court precedent, since *Belo Corp.* specifically permits an employer to reduce an employee's hourly rate so that the employee's total pay remains the same. 316 U.S. at 630.[10]

14. Even though this Court has already acknowledged this fact,[11] Plaintiffs nevertheless carelessly overstate the breadth of the *Helmerich* decision in a last-ditch attempt to revive their meritless FLSA claims. However, the Eleventh Circuit has already rejected a similar argument in *Wethington v. Montgomery*, 935 F.2d 222, 228–29 (11th Cir. 1991). In *Wethington*, Montgomery, Alabama fire fighters attempted to rely on *Helmerich* in claiming that the city violated the FLSA by reducing their wage rate for the sole purpose of avoiding the effects of the FLSA. *Id.* at 228. In rejecting this argument, the Eleventh Circuit found that:

> [t]he fire fighters are correct in stating that the City's creative calculation of the regular rate was meant to lower the wage rate. The use of the calculation, however, was simply its most convenient method of lowering the equivalent of an hourly rate to

---

[8] *See* Plaintiff's Plaintiffs' Motion to Reconsider the Court's Granting Summary Judgment on Plaintiffs' FLSA Wage Claim (the "Motion to Reconsider") (Dkt. #101) at pp. 3–5.

[9] *See* Memorandum & Order (Dkt. #95) at pp. 10–11 (*citing Belo Corp.*, 316 U.S. at 630).

[10] In the event Plaintiffs try to claim that *Helmerich* somehow overruled *Belo Corp.*, such is clearly not the case. *Helmerich* specifically cited and distinguished *Belo Corp.* and thus could not have overruled it. *Helmerich*, 323 U.S. at 42.

[11] *See* Memorandum & Order (Dkt. #95) at pp. 10–11 (*citing Belo Corp.*, 316 U.S. at 630).

174563

the precise level needed to avoid increasing or lowering total salary payments. . . . Nothing in the [FLSA] prohibits such a reduction. Indeed, the Supreme Court has held that schemes designed to maintain the same wage after the [FLSA's] effective date cannot be invalid solely because they seek such consistency.

*Id.* at 228 (*citing Belo Corp., supra*, 316 U.S. 624). Consequently, Plaintiffs' reliance on *Helmerich* as somehow prohibiting a reduction in their hourly rate so as to maintain a constant annual salary is wholly unfounded.[12]

15. Despite the groundless claims found in Plaintiffs' motion to reconsider, this Court has already performed the precise analysis called for by the FLSA, and has properly determined that Celanese complied with federal law. Unlike the employer in *Helmerich*, Celanese actually paid its employees a specified hourly wage for regular, non-overtime hours and properly calculated overtime based upon that wage. This hourly rate was not based on fiction, but rather constituted the "regular rate of pay" as defined by the FLSA. For these reasons, Celanese respectfully requests that Plaintiffs' motion for reconsideration be denied.

Respectfully submitted,

_____
Jerry L. Mitchell
Southern District I.D. No. 12653
State Bar No. 14214650
KASOWITZ, BENSON, TORRES &
  FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, Texas 77002
(713) 220-8800
Fax: (713) 222-0843

ATTORNEY IN CHARGE FOR
DEFENDANT CELANESE LTD.

---

[12] Indeed, Plaintiffs can point to no Supreme Court or Fifth Circuit opinion post-*Helmerich* that has struck down an employer's pay policy on the basis that it constituted an improper "split-day plan."

174563

OF COUNSEL:

J. Arthur Prestage
State Bar No. 16267700
J. Michael Wilson
State Bar No. 24047125
KASOWITZ, BENSON, TORRES &
 FRIEDMAN LLP
700 Louisiana Street, Suite 2200
Houston, Texas 77002
(713) 220-8800
Fax: (713) 222-0843

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument has been forwarded to all known counsel of record pursuant to the Federal Rules of Civil Procedure, on this the 11th day of May, 2006 as follows:

>Bobby D. Brown
>LAW OFFICE OF BOBBY D. BROWN
>104 Kelly Drive, Suite D
>Victoria, Texas 77904

Jerry L. Mitchell

174563