O

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

| | | |
|---|---|---|
| **HAZEL CONNER AND** § | | |
| **SYTHERIA TUCKER,** § | | |
| § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | | **CIVIL ACTION NO. V-03-54** |
| § | | |
| **CELANESE, LTD.** § | | |
| § | | |
| Defendant. § | | |

## MEMORANDUM & ORDER

Pending before is Defendant Celanese, Ltd.'s Motion for Partial Reconsideration (Dkt. #97). Upon consideration of the motion, the response, the reply, and the applicable law, the Court is of the opinion that the motion should be denied.

### Factual and Procedural Background

The underlying factual background in this case was outlined in the Court's Memorandum & Order dated March 31, 2006 and for the sake of brevity will not be repeated here. In that Memorandum & Order, the Court granted in part and denied in part Defendant's Motion for Summary Judgment filed against Plaintiffs Hazel Conner ("Conner") and Sytheria Tucker ("Tucker").[1] More specifically, the Court granted summary judgment on Plaintiffs' claims brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and also on Tucker's claim for intentional infliction of emotional distress. However, the Court denied summary judgment on Plaintiffs' breach of contract claim. Defendant now moves the Court to reconsider its ruling on

---

[1] Conner and Tucker may be referred to collectively as "Plaintiffs" throughout this Memorandum & Order.

Plaintiffs' breach of contract claim and enter a judgment in Defendant's favor.[2]

**Discussion**

In the Court's Memorandum & Order, it noted that there exist genuine issues of material fact as to whether Plaintiffs had knowledge of the modification of their pay rate and whether Defendant unequivocally notified Plaintiffs of the change in pay rates. Defendant urges the Court to reconsider nine pieces of evidence with respect to the Court's decision:

(1) Defendant issued administrative policies and procedures in 1987 detailing the method for calculating the 12-hour rate;

(2) Defendant issued a revised pay policy in 1995 that also expressly set forth the 12-hour rate and reiterated the method used to arrive at that rate;

(3) Defendant issued another revised pay policy in 1999 that described the 12-hour rate and the 8-hour rate and expressly states that 12-hour shift employees are paid the 12-hour rate;

(4) Defendant's pay policies are, and have been since 1987, readily available to its employees in electronic and/or hard copy form;

(5) Plaintiffs demonstrated their knowledge of the pay policy changes by filling out time sheets and using pay rate codes that differentiated between 8-hour and 12-hour rates;

(6) Plaintiffs received pay stubs with each check that broke down their pay into "regular hours," "overtime hours," etc., to permit them to determine their hourly rate, particularly when compared to the corresponding time sheet;

(7) Prior to the employee vote on the 12-hour shift change, all employees were provided information describing the shift and pay rate changes and listing its advantages and disadvantages;

(8) Conner admitted that she twice voted in favor of the change to the 12-hour shifts and the ballot for such voting was attached to the packet of information describing the

---

[2] As of the morning of the date of this Memorandum & Order, the parties have informed the Court that Tucker's breach of contract claim has been settled. Therefore, Defendant's motion is moot as applied to Tucker and the Court will address Defendant's motion only as it applies to Conner's breach of contract claim.

>
> 12-hour rate; and
>
> (9) Conner was a member of the Quality Assurance Team ("QAT") that was charged with answering other employee's questions regarding the 12-hour rate.

Before addressing Defendant's evidence, the Court finds it appropriate to briefly revisit the law applicable to Conner' breach of contract claim. Under Texas law, even an at-will employee has a contract with her employer that is "valid and subsisting" "until terminated." *See Paniagua v. City of Galveston, Tex.*, 995 F.2d 1310, 1313 (5th Cir. 1993) (holding that, under Texas law, a contract may be terminable at will and without cause but an employer cannot promise to pay employee a certain wage and then unilaterally decide to pay employee less for work she has already performed). Though employers are free to change their wage rates, they must first inform their employees before doing so. *Id.*

In the employment at will context, either the employer or the employee may impose modifications to the employment terms as a condition of continued employment. *Hathaway v. General Mills*, 711 S.W.2d 227, 229 (Tex. 1986). The party asserting the modification bears the burden of proving that the other party agreed to modify the employment terms. *Id.* When the employer notifies the employee of the change in terms, the employee must either accept the new terms or quit. *Id.* An employer seeking to prove modification must show that (1) it notified the employee of the change, and (2) that the employee accepted the change. *Id.* In order to prove notice, an employer asserting a modification must prove that it unequivocally notified the employee of definite changes in employment terms. *Id.* (citing *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex. Civ. App.–Tyler 1964, writ ref'd n.r.e.)). *See Hathaway*, 711 S.W.2d at 229. If an employer proves that he unequivocally notified the employee of the changes, the employee's continuing employment will constitute acceptance as a matter of law. *Hathaway*, 711 S.W.2d at 229; *see also In re*

*Halliburton Co.*, 80 S.W.3d 566, 568 (Tex. 2002). One Texas appellate court has held that when an employer establishes the employee's actual receipt of a document that "explicitly and plainly" explains a new employment policy, the employee's claim that he did not read or understand the policy is insufficient to negate a finding that the employer gave unequivocal notice of a change. *See Burlington N. R.R. Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex. App.–Fort Worth 1996, no writ).

Another Texas appellate court, explored the differences between actual and constructive notice. It wrote:

> Notice in law is of two kinds–actual and constructive. These descriptive terms need but little explanation. In common parlance, "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed. Actual notice is always a question of fact.

*Hexter v. Pratt*, 10 S.W.2d 693, 693 (Tex. Com. App. 1928).

### I.   Unequivocal Notice

#### A.   Defendant's Assertions (1), (2), (3), (4), (7) and (8)

Defendant's evidentiary assertions (1), (2), (3), (4), (7) and (8) are all seemingly intended to prove that Defendant provided unequivocal notice of the pay rate changes. Exhibits C2, C3, and C4 attached to Defendant's motion for summary judgment are simply the pay policies described by Defendant. Defendant has not provided the Court with any affidavit testimony expressly stating that Conner actually received and/or were personally issued these documents. The Court finds that it was insufficient for Defendant to merely and passively make its pay policies available to its

4

employees. In order to be unequivocal, Defendant must have actively notified Conner of the change.

In support of its modification argument, Defendant relies on *Halliburton*. In that case, the plaintiff did not dispute that he was provided with written notice that explained a new arbitration program. 80 S.W.3d at 568. The plaintiff argued, however, that he did not understand the documents. *Id.* Despite these facts, the court held that "[t]he material unequivocally notified [the employee] that his employment terms would be changing." *Id.* at 568-69. *Halliburton* thus stands for the proposition that where the employee does not dispute that he received notice of the policy change, notice can be unequivocal even where an employee did not understand the terms of the policy change.[3] *Halliburton* does not govern the outcome of this case because there is a fact issue as to whether Conner was ever unequivocally notified of the change in her pay rate.

Even if Defendant could provide affidavits stating that Conner did in fact receive these pay policies, drawing all inferences in favor of Conner, her affidavit indicates that she disputes ever receiving the pay policies before December 4, 2003 and that she denies ever being told that she was going to be paid at an hourly rate less than her posted wage rate before such date.[4] Conner also maintains that she was never shown a copy of Defendant's pay formula. *Id.* Defendant's assertion that Conner voted twice in favor of the change to the 12-hour shifts and the ballot for such voting was attached to the packet of information describing the 12-hour rate is insufficient to prove either

---

[3] The employee is deemed to have constructive knowledge of the terms of the contract so long as he was unequivocally notified of the change. *See Burlington N. R.R. Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex. App.–Fort Worth 1996, no writ) (citing *Hexter v. Pratt*, 10 S.W.2d 693, 693 (Tex. Com. App. 1928)).

[4] *See* Dkt. #67. Pls.' Ex. 4, Aff. of Hazel Conner. Defendant objected to this exhibit. The Court overrules Defendant's objections.

knowledge or unequivocal notice absent proof that Conner's actual ballot was attached to the information describing the 12-hour rate. Moreover, even if Conner's denials are untruthful, credibility is a determination that must be made by the jury rather than this Court. Therefore, due to remaining material issues of fact, Defendant's reliance upon evidentiary assertions (1), (2), (3), (4), (7) and (8) are insufficient to prove unequivocal notice.

### B. Defendant's Assertion (5)

In support of its argument that it provided Conner with unequivocal notice of the pay rate change, Defendant also argues that Conner filled out time sheets and used pay rate codes that differentiated between 8-hour rates and 12-hour rates. Defendant apparently wishes the Court to draw an inference that Conner had knowledge of the pay policy changes as demonstrated by the time sheets she filled out. The Court has examined the time sheets submitted by Defendant. Though the time sheets differentiate between 12-hour shifts and the 8-hour shifts, the time sheets do not list the 8-hour rates and the 12-hour rates of pay but instead use a code for each. Therefore, the Court concludes that Conner did not necessarily demonstrate that she had knowledge and/or unequivocal notice of the pay policy changes simply because she filled out the time sheets referred to by Defendant.

### C. Defendant's Assertion (9)

To the extent Defendant argues that it provided unequivocal notice regarding the 12-hour pay policy to Conner pursuant to Conner's membership of the QAT, Defendant does not refer the Court to any evidence demonstrating that Conner received any training at all with respect to the 12-hour rate. In addition, Conner asserts that it was never her responsibility to explain the shift change,

the 12-hour pay policy, or the pay formula.[5] In fact, she maintains that she did not even understand the policy herself.[6]

In sum, Defendant has failed to prove that it provided Conner with unequivocal notice of a pay rate change when she switched to working 12-hour shifts. Therefore, subject to the Court's finding on inquiry notice below, Defendant is not entitled to summary judgment on Conner's breach of contract claim.

## II. Inquiry Notice

### A. Defendant's Assertions (1), (2), (3), (4)

Though the Court understands Defendant's first four assertions predominantly to be claims that it provided Conner with unequivocal notice of her pay rate because she must have read the pay policies, the Court will address the same assertions with regard to Conner's alleged constructive knowledge of these policies due to their issuance and relative availability.

There is evidence in the record that Conner clearly had knowledge of the existence of pay formulas. For instance, in her deposition, Conner testified that she was told by Katy Morales ("Morales") who worked in Defendant's human resources department that there was a pay formula.[7] It thus appears that Conner's statement in her affidavit that she was "unaware of . . . Defendant's pay policies"[8] was either untruthful or misguided.

The Court holds that the pay formula, as well as the use of different pay codes on the time

---

[5] *See* Dkt. #67, Pl.'s Ex. 4, Aff. of Hazel Conner.

[6] *Id.*

[7] Dkt. #67, Def.'s Ex. A, Dep. of Hazel Conner, 37:12-13 and 31:12-15.

[8] *See* Dkt. #67, Pls.' Ex. 4, Aff. of Hazel Conner.

sheets, constituted a "means of knowledge" which would have led to the discovery that Conner was not being paid the 8-hour rate if she had made a proper inquiry. *Hexter v. Pratt*, 10 S.W.2d 693, 693 (Tex. Com. App. 1928).

Conner produced summary judgment evidence suggesting that she attempted to pursue a proper inquiry by requesting a copy of the pay formula from Morales.[9] She testified that she never received a copy of Defendant's pay formula.[10] Thus, Conner satisfied her duty to inquire and a factual question remains as to whether she had actual notice of the policy change.

### B.     Defendant's Assertion (6)

In *Akpan*, the court noted that the language in the employer's handbook was unequivocal. *See Burlington N. R.R. Co. v. Akpan*, 943 S.W.2d 48, 51 (Tex. App.–Fort Worth 1996, no writ). The handbook clearly provided that:

> The following policy applies to all new hires and employees effective January 1, 1991. . . . No legal action may be filed in any court. All disputes concerning termination of employment . . . will be resolved by arbitration.

*Id.* Unlike the document found to constitute unequivocal notice in *Akpan*, Conner's pay stubs and time sheets relied on by Defendant do not "explicitly and plainly" indicate an intent to change the parties' original agreement with regard to pay rates. Therefore, the issue before the Court is whether Conner's pay stubs put her on inquiry notice of the 12-hour calculated rate she was being paid by Defendant. Defendant asserts that Conner received pay stubs with each check that broke down her pay into regular hours, overtime hours, etc., to permit her to determine her hourly rate, particularly when compared to the corresponding

---

[9] Dkt. #63, Def.'s Ex. A, Dep. of Hazel Conner, 37:12-15.

[10] *Id.*

time sheet. Even assuming Conner's time sheets and pay stubs clearly put her on inquiry notice, as stated above, Conner testified at her deposition that she never received a copy of Defendant's pay formula though she asked that a copy be sent to her.[11] Thus, Conner satisfied her duty to inquire and a factual question remains as to whether she had actual knowledge of the policy change.

### C. Defendant's Assertion (9)

In the event Defendant argues that Conner was put on inquiry notice because of her membership of the QAT, Defendant has not alleged sufficient facts that would lead the Court to hold that Conner was put on inquiry notice. Conner vehemently disputes Defendant's assertion that it was her responsibility to explain the shift change. Thus, there is a fact issue as to whether Conner had "a duty of finding out and knowing" about the 12-hour pay rate. *Hexter v. Pratt*, 10 S.W.2d 693, 693 (Tex. Com. App. 1928).

### Conclusion

For the reasons explained above, the Court DENIES Defendant's Motion for Partial Reconsideration (Dkt. #97).

It is so ORDERED.

Signed this 21st day of June, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE

---

[11] Def.'s Ex. A, Dep. of Hazel Conner, 29:12-15; 37:12-15; 41:18-22.